1  Alan M. Mansfield, SBN: 125998
   WHATLEY KALLAS LLP
2  355 So. Grand Avenue, Suite 2450
   Los Angeles, CA 90071
3
   16870 W. Bernardo Drive, Suite 400
4  San Diego, CA 92127
   Phone: (310) 684-2504
5           (858) 674-6641
   Fax:    (855) 274-1888
6  Email: amansfield@whatleykallas.com

7  Thomas Mauriello SBN: 144811
   MAURIELLO LAW FIRM
8  1181 Puerta Del Sol #120
   San Clemente, CA 92673
9  Phone: (949) 542-3555
   Fax:    (949) 606-9690
10 Email: tomm@maurlaw.com

11 *Attorneys for Plaintiff*

12 *[Additional Counsel Appear on Signature Page]*

13            **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15                 **WESTERN DIVISION**

16
17 LAUREN SLAUGHTER, on behalf of
   herself and all others similarly situated      CASE NO:  2:21-cv-2875
18 and for the benefit of the general public,
                                                  **CLASS ACTION**
19
              Plaintiff,
20                                                **COMPLAINT FOR:**
21 v.
                                                   1) **VIOLATION OF THE**
22 VIRGIN SCENT, INC., D/B/A                          **CONSUMERS LEGAL**
   ARTNATURALS, and DOES 1-10                        **REMEDIES ACT, CAL. CIV.**
23                                                    **CODE §§1750, *et seq.***
              Defendants.
24                                                 2) **VIOLATION OF CAL.**
                                                      **BUSINESS & PROFESSIONS**
25                                                    **CODE §17200, *et seq.***
26
                                                   3) **BREACH OF THE IMPLIED**
27                                                    **WARRANTIES OF**
                                                      **MERCHANTABILITY AND**
                                                      **FITNESS**
28

                             1

4) **BREACH OF EXPRESS WARRANTY**

5) **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301,** *et seq.*

6) **FRAUD AND DECEIT**

7) **NEGLIGENT MISREPRESENTATION**

8) **NEGLIGENCE**

9) **RESTITUTION, COMMON COUNTS, UNJUST ENRICHMENT, QUASI-CONTRACT AND/OR ASSUMPSIT**

<u>DEMAND FOR JURY TRIAL ON ALL CAUSES OF ACTIONS SO TRIABLE</u>

Plaintiff, on behalf of herself and all others similarly situated and for the benefit of the general public, as applicable, upon personal knowledge as to her own acts and status as specifically identified herein, and otherwise upon information and belief based upon investigation as to the remaining allegations, which allegations are likely to have evidentiary support after a reasonable opportunity for investigation and discovery, hereby files this Complaint and alleges as follows against Defendant VIRGIN SCENT, INC., D/B/A ARTNATURALS, a corporation with its principal place of business and headquarters in California, and DOES 1-10 ("Defendant"):

## <u>SUMMARY OF CLAIMS</u>

1.     This case arises from Defendant's manufacture, marketing, packaging, distribution, and sale of hand sanitizer products containing benzene, a known carcinogen and reproductive toxin, at levels many multiples of the emergency, interim limit set by the United States Food and Drug Administration ("FDA"). Defendant's adulterated and misbranded hand sanitizer products, which have been

sold and distributed from California throughout the United States during the course of the COVID-19 pandemic, are not merchantable, are not of the quality represented, and indeed are worthless because they are not legal to sell. No reasonable consumer would knowingly purchase a topical product that may contain high levels of a known carcinogen and reproductive toxin and that was illegal to purchase or sell.

2.      According to the FDA, "Benzene is a carcinogen that can cause cancer in humans."[1] More specifically, the FDA currently recognizes the high danger of benzene and lists it as a "Class 1 solvent" and a "carcinogen" among the substances that "should be avoided" and "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity."[2] The Centers for Disease Control and Prevention ("CDC") states that the Department of Health and Human Services has determined that benzene causes cancer in humans.[3] The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound, defining it as "carcinogenic to humans."[4] In 2011, the United States Environmental Protection Agency introduced regulations that lowered limits on benzene in gasoline due to its carcinogenic nature.[5] California's Proposition 65 Fact Sheet for benzene states, "Benzene is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm. Exposure to benzene can cause leukemia. Exposure to benzene during pregnancy may affect development of the child. It may also harm the male reproductive system."[6]

3.      Defendant holds itself out as a purveyor of natural and toxin-free personal-care products, stating on its interactive website that "ArtNaturals was born

[1] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages
[2] https://www.govinfo.gov/content/pkg/FR-1997-12-24/html/97-33639.htm
[3] https://emergency.cdc.gov/agent/benzene/basics/facts.asp
[4] https://monographs.iarc.who.int/list-of-classifications)
[5] https://www.epa.gov/gasoline-standards/gasoline-mobile-source-air-toxics
[6] https://www.p65warnings.ca.gov/fact-sheets/benzene

out of a desire to free beauty from high prices, toxic chemicals and all-around bad vibes," and that its products are "CHEMICAL FREE – We use only nourishing, natural ingredients to boost your beauty with no preservatives, parabens, or phthalates to drag you down." Defendant used the unprecedented consumer demand precipitated by the COVID-19 pandemic to mislead and take advantage of consumers in the sale of what has become an essential and indispensable good, leveraging its "chemical free" brand and representing on its website that it uses "only nourishing, natural ingredients" "free from . . . toxic chemicals." More specifically, Defendant's labelling, packaging, marketing, and advertising of its hand sanitizer products uniformly represent that those products are "plant-based," "natural," and pure. Their labelling includes prominent representations such as "NATURAL ELEMENTS," as well as the following description:

> PLANT-BASED, SCENT FREE HAND SANITIZER, CLEANSES YOUR HANDS OF DIRT, GRIME, AND GERMS WITH THE NATURAL HEALING POWER OF ALOE VERA, HYDRATING JOJOBA OIL, AND NOURISHING VITAMIN E. NOW YOU CAN CLEANSE AND PROTECT YOUR HANDS WITH OUR VEGAN FORMULA THAT LEAVES YOUR HANDS HYDRATED, HEALTHY, AND GERM-FREE.

That labelling also states, "SHIELD YOUR HANDS FROM GERMS & INFECTION NATURALLY. art**naturals** [emphasis original] PLANT-BASED, SCENT FREE HAND SANITIZER, INFUSED WITH ALOW VERA, VITMAIN E & JOJOBA, KEEPS YOUR HANDS CLEAN AND HYDRATED." The same labelling states that Defendant's hand sanitizer products are "RECOMMENDED FOR REPEATED USE." Defendant's website, which is referenced on the product's labeling and thus is a part of that labeling, states that its hand sanitizer products are "SAFE FOR KIDS" because its "[p]ure natural ingredients are gentle enough for children's sensitive skin." Elsewhere, that website also states that Defendant's

"nutrient rich hand sanitizer formula" contains "pure natural ingredients that deeply nourish your skin" and are "[f]ree from the harshest synthetic chemicals used on other brands that irritate sensitive skin." In response to a "Frequently Asked Question" on its website inquiring, "Is artnaturals scent free hand sanitizer safe?" Defendant states, "artnaturals Hand Sanitizer is completely safe for use and protects you while at the same time moisturizing and protecting dry, cracked hands."

4.    Contrary to its labelling, packaging, marketing, and advertising, Defendant's hand sanitizer products have been determined to actually or potentially contain undisclosed cancer-causing and reproductive-toxin chemicals at levels many multiples of the FDA's emergency, interim limits. Not only were these products worthless and unfit for any purpose, because their benzene levels were above the FDA's emergency, interim limits they could not legally be sold from California, or anywhere in the United States, in the first place. No labelling, packaging, marketing, or advertising for Defendant's hand sanitizer products disclosed that they do or may contain benzene.

5.    The FDA regulates hand sanitizer products as over-the-counter ("OTC") drugs. Accordingly, such products are subject to the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), and to FDA regulations and guidance, as well as analogous state statutes and regulations. Defendant's packaging, labeling, distribution, marketing, and sale of its hand sanitizer products is also subject to California's Sherman Food, Drug & Cosmetic Law, California Health & Safety Code §110000 *et seq.* ("Sherman Law"), which adopts, incorporates, and is identical in the respects relevant here to the federal FDCA.

6.    Defendant does not disclose the presence of benzene in its hand sanitizer products at all, and in fact misrepresents such products as being "natural," "chemical free," and free from toxic chemicals. Such misrepresentations and omissions of material fact by Defendant render its hand sanitizer products "misbranded" and/or "mislabeled."

7.     Under California law, a product that is "misbranded" or "mislabeled" cannot legally be manufactured, advertised, distributed, held, or sold in or from this State. Misbranded products thus have no economic value and are legally worthless. Indeed, the sale, purchase, or possession of misbranded products is a criminal act in California, and the FDA even threatens companies with seizure of misbranded or mislabeled products. This "misbranding" or "mislabeling," standing alone, without any allegations of deception by Defendant or evidence of actions on such material representations or omitted facts, constitutes an "unlawful" business practice and renders Defendant strictly liable to Plaintiff and members of the Class, and public injunctive relief appropriate for the benefit of the general public. Purchasers of misbranded or mislabeled products in general and Defendant's hand sanitizer products in particular are thus entitled to a full refund of their purchase price.

8.     In addition, in response to Defendant's representations and omissions of material fact, consumers purchased Defendant's hand sanitizer products and suffered damage. Plaintiff and other Class members reviewed the labels, advertising, and/or marketing of Defendant's hand sanitizer products, reasonably acted in positive response to those representations and omitted material facts and was thereby deceived. Plaintiff and Class members did not know, and had no reason to know, that Defendant's hand sanitizer products were misbranded or mislabeled. Moreover, the very fact that Defendant sold such misbranded or mislabeled products and did not disclose the material fact of the actual or potential presence of benzene in its hand sanitizer products to consumers is a deceptive act in and of itself. Plaintiff would not have purchased Defendant's hand sanitizer products at all but for Defendant's material misrepresentations and omissions, or if she had been told of the actual or potential presence of benzene in these hand sanitizer products. Plaintiff and members of the Class who purchased Defendant's hand sanitizer products were overcharged for these products, which by law were worthless.

9.     Defendant represented and warranted that its hand sanitizer products

were comprised of the materials listed on the products' labels and were merchantable and fit for use. In reality, those products have been determined to actually or potentially contain dangerously high levels of benzene. Defendant has been unjustly enriched through its sale of such wholly worthless products.

## PARTIES

10.    On personal knowledge, Plaintiff Lauren Slaughter is a natural person and a resident of Alabama. During the past year, Plaintiff purchased Defendant's hand sanitizer products, and specifically purchased Defendant's ArtNaturals-branded hand sanitizer products at a grocery store in Birmingham, Alabama, in approximately October 2020, primarily for personal, family, and household use. Prior to purchasing this product, Plaintiff reviewed the product label, which contained no disclosure of the actual or potential presence of benzene. Plaintiff would not (indeed, could not) have purchased Defendant's hand sanitizer products but for Defendant's concealment of the actual or potential presence of benzene in those products.

11.    Defendant Virgin Scent, Inc., d/b/a ArtNaturals, is a Delaware corporation with its principal place of business at 16325 S. Avalon Blvd., Gardena, CA, 90248. At all times material this action, Defendant has been engaged in the manufacture, sale, marketing, and/or distribution of adulterated and misbranded hand sanitizer products in the United States and in and from California specifically.

12.    At all times mentioned herein, each Defendant, whether actually or fictitiously named as DOES 1-10 in this Complaint, was the principal, agent, or employee of each other Defendant, and in acting as such principal, or within the course and scope of such employment or agency, conspired with the other Defendants to take part in the acts and omissions as set forth below, by reason of which each Defendant is liable to Plaintiff, the proposed Class, and the general public for the relief prayed for herein.

## **JURISDICTION AND VENUE**

13.     This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because Plaintiff and other members of the proposed class are citizens of states different from that of Defendant, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the proposed class consists of more than 100 class members. This Court also has jurisdiction over this action under 15 U.S.C. § 2301, *et seq.*, known as the Magnuson-Moss Warranty Act, because of its jurisdiction based on CAFA.

14.     Jurisdiction over Defendant is proper because it is a corporation with its principal place of business located in the State of California and has purposely availed itself of the privilege of conducting business activities in California because it currently maintains systematic and continuous business contacts with the State of California and is licensed to do business there.

15.     Venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred" in this District (28 U.S.C. § 1391(b)(2)), and because Defendant is subject to the personal jurisdiction of this Court (28 U.S.C. § 1391(b)(3)). Defendant conducts business in the State of California and within this District from the corporate address listed above and resides within this District. Defendant's commercial activities in the State of California and this District include, but are not limited to, being based here, engaging in the marketing, distribution, and sale of goods from this District throughout the United States, and undertaking the predominance of its business transactions within this District. Venue is also proper in this Court because many Class members did business with Defendant and engaged in transactions with Defendant from within this District, and Defendant has received substantial profits from customers who engaged in transactions originating within this District.

16.     Plaintiff's Declaration of Venue as required under California Civil Code §1780(d), which avers that a significant part of the events or omissions giving

rise to the claims alleged herein took place in this District, is attached hereto.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action on behalf of both herself and a class of similarly situated consumers ("Class"), pursuant to Fed. R. Civ. Proc. Rule 23, to challenge and remedy Defendant's unlawful and wrongful business practices. The Class is defined as:

> All individuals and entities in the United States and its territories and possessions who, since April 1, 2020, purchased a hand sanitizer product not for purposes of resale or distribution that was manufactured, distributed, or sold by Defendant, excluding any claims for personal injury.

18.     Excluded from the Class are any judge or magistrate presiding over this action, and members of their families, as well as Defendant and its employees, officers, directors, agents, legal representatives, assigns, and successors.

19.     The class period continues until notice is mailed to the Class, or other date as set by the Court. Plaintiff reserves the right to modify the class definition and to create subclasses.

20.     The proposed Class is so numerous that the individual joinder of all its members in one action is impracticable. While the exact number and the identities of Class members are not known at this time and cannot be known without discovery, based on Defendant's reported national sales there are likely hundreds of thousands, if not millions, of members of the Class. These Class members are identifiable based on objective criteria.

21.     Questions of law and fact common to the Class exist and predominate over any questions affecting only individual members of the Class. These common questions include, among others:

      a)     whether Defendant's hand sanitizer products contained benzene;

      b)     whether Defendant's hand sanitizer products were

adulterated, misbranded, or mislabeled;

c)    whether Defendant made express or implied warranties to Plaintiff and Class members regarding its hand sanitizer products;

d)    whether Defendant knew or should have known of the actual or potential benzene contents of its hand sanitizer products;

e)    whether Defendant had a duty to investigate the benzene contents of its hand sanitizer products;

f)    whether Defendant investigated the benzene contents of its hand sanitizer products;

g)    whether Defendant misrepresented or omitted material facts regarding its hand sanitizer products;

h)    whether Defendant's misrepresentations or omissions were of a fact it was obligated to disclose and/or were material to consumers;

i)    whether Defendant falsely warranted the quality or contents of its hand sanitizer products, or that those products were merchantable and fit for intended purposes;

j)    whether Plaintiff and Class members have been injured, lost money, or suffered damage as a result of Defendant's unlawful conduct, and the amount of their injury, loss, or damage;

k)    when Defendant knew or should have known of the benzene contents of its hand sanitizer products;

l)    the value of Defendant's hand sanitizer products as sold;

m)    whether Defendant's actions were unlawful, unfair, or fraudulent under the UCL and in violation of the state and

federal laws referenced herein;

n)    the amount of revenues and profits Defendant received or saved and/or the amount of monies or other obligations imposed on or lost by Class members as a result of any unlawful conduct; and

o)    whether Plaintiff and the members of the Class are entitled to statutory, actual, and/or exemplary damages and/or equitable monetary relief from Defendant based on the causes of action asserted by them and, if so, the nature and appropriate measure of such relief.

22.    Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful conduct by Defendant, and because Plaintiff and all Class members suffered the same type of economic harm. Plaintiff has the same interest in this matter as all other Class members.

23.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff's interests are not materially antagonistic to or irreconcilably in conflict with the interests of members of the Class. Plaintiff is represented by attorneys who are competent and experienced in consumer class action litigation.

24.    A class action is superior to other available group-wide methods for the fair and efficient adjudication of this controversy because the individual damage and harm suffered by each individual Class member may be relatively small compared to the expense and burden of prosecuting such claims through a multitude of individual cases. Separate, individual actions would burden the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

25.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive and/or declaratory relief appropriate with respect to the Class as a whole.

26.     As the products at issue have been sold online or through retailers who maintain electronic purchase records, notice of the pendency of and any resolution of this action can be provided to the Class members by individual electronic notice or the best notice practicable under the circumstances.

## FACTUAL ALLEGATIONS

27.     Hand sanitizers are considered OTC drugs regulated by FDA.[7] As such, they must be both safe and effective and are subject to federal Good Manufacturing Practices regulations and the FDCA's state-law analogues, including California's Sherman Law. Federal and state regulatory regimes require that labeling for OTC drugs identify each active and inactive ingredient.[8] 21 C.F.R. 201.66 establishes labeling requirements for OTC drugs and defines an inactive ingredient as "any component other than an active ingredient." An "active ingredient" is "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body of humans. *The term includes those components that may undergo chemical change in the manufacture of the drug product and be present in the drug product in a modified form* intended to furnish the specified activity or effect" (emphasis added).

28.     Until early March 2020, the FDA did not allow *any* benzene in hand sanitizer products given its carcinogenic and reproductive toxicity potential. With the onset of the COVID-19 pandemic, however, demand for hand sanitizer products increased tremendously, vastly exceeding available supply. Many companies, including Defendant, began substantial increases in manufacturing, distributing,

---

[7] https://www.fda.gov/drugs/information-drug-class/qa-consumers-hand-sanitizers-and-covid-19

[8] https://www.fda.gov/media/72250/downloadi

marketing, and selling hand sanitizer products in order to take advantage of unprecedented consumer demand.

29.    In early March, 2020, the FDA issued a Temporary Policy for Preparation of Certain Alcohol-Based Hand Sanitizer Products During the Public Health Emergency (COVID-19), Guidance for Industry. This policy was issued "to communicate its policy for the temporary preparation of certain alcohol-based hand sanitizer products by firms that register their establishment with FDA as an over-the-counter (OTC) drug manufacturer, re-packager, or re-labeler to prepare alcohol-based hand sanitizers under the circumstances described in this guidance ('firms') for the duration of the public health emergency[.]"[9] This policy has been updated several times since it was first implemented and remains in effect.

30.    The FDA policy establishes quality standards and specifications for such products. The FDA felt the need to develop these standards in light of the "FDA's experience in which data submitted by fuel ethanol manufacturers producing ethanol via fermentation and distillation indicated that at least some fuel ethanol products included harmful chemicals, including gasoline and benzene, which is a known human carcinogen (cancer-causing agent)."[10]

31.    Among the limits on ethanol-related impurities established in the FDA policy were limits on benzene, for which the FDA established an interim limit, based on the COVID-19 public health emergency, of 2 parts per million ("PPM"). The FDA policy admonished that firms marketing alcohol-based hand sanitizer products "should test the ethanol (or have a third-party laboratory conduct testing) to identify the levels of impurities listed in the USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment."[11]

32.    An OTC drug label that omits or misstates ingredients renders the drug

---

[9] https://www.fda.gov/media/136289/download
[10] *Id.*
[11] *Id.*

misbranded.[12] The manufacture, sale, or distribution of adulterated or misbranded products is prohibited under the FDCA and also under analogous state laws, including California's Sherman Law, which similarly prohibits the distribution or sale of products that are adulterated, misbranded, or mislabeled. *See* Cal. Health and Safety Code Section 111330 ("Any drug or device is misbranded if its labeling is false or misleading in any particular").

33.     In addition, California's Proposition 65 also prohibits the sale of any product containing benzene, a known and enumerated carcinogen and reproductive toxin, without providing a clear and conspicuous warning to consumers of the presence thereof, which Defendants failed to provide.

34.     The following conditions also render a drug misbranded or adulterated under the FDCA, 21 U.S.C. §§ 351–52, which are mirrored in analogous provisions of California's Sherman Law and other state's laws:

a. "if it has been prepared, packed, or held under unsanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health;"

b. "if . . . the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice…as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess;"

c. "If it purports to be or is represented as a drug the name of which is recognized in an official compendium, and … its quality or purity falls below, the standard set forth in such compendium. …"

d. "If . . . any substance has been (1) mixed or packed therewith so as to reduce its quality or strength or (2) substituted wholly or in part therefor."

e. "If its labeling is false or misleading in any particular."

---

[12] 21 C.F.R. § 201.6; 201.10.

f. "If any word, statement, or other information required…to appear on the label or labeling is not prominently placed thereon…in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."

g. If the labeling does not contain, among other things, "the proportion of each active ingredient…"

h. "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings … against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users. …"

i. "If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein."

j. "if it is an imitation of another drug;"

k. "if it is offered for sale under the name of another drug."

l. "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."

m. If the drug is advertised incorrectly in any manner; or

n. If the drug's "packaging or labeling is in violation of an applicable regulation…"

35.    Under the Sherman Law (Cal. Health and Safety Code Section 111440 *et seq.*), it is unlawful for any person to misbrand any drug; to manufacture, sell, deliver, hold, or offer for sale any drug that is misbranded; or for any person to receive in commerce any drug that is misbranded or to deliver or proffer for delivery any such drug. It is thus unlawful under California law for Defendant to sell, or even for individuals to receive, its hand sanitizer product if it contains even low levels of benzene.

36.    Defendant's hand sanitizer product labeling did not and does not disclose the actual or potential presence of any benzene, nor does Defendant disclose

15

anywhere else the actual or potential presence of benzene in its hand sanitizer products. Nowhere does Defendant disclose or state whether it has tested its hand sanitizer products for the presence of benzene. As these are facts directly related to the safety of such products, and applicable state and federal law requires the disclosure of the actual or potential presence of chemicals such as benzene, Defendant had an affirmative duty to disclose the actual or potential presence of benzene in its hand sanitizer products.

37. On March 24, 2021, Valisure, an independent analytical laboratory that is accredited to 2017 International Organization for Standardization ("ISO") 17025 standards for chemical testing and is registered with the FDA and the Drug Enforcement Administration, tested and detected high levels of benzene and other contaminants in a number of manufacturers' hand sanitizer products. Based on the dangerously high levels of benzene detected in many manufacturers' hand sanitizer products, Valisure submitted a citizen petition to the FDA on March 24, 2021, reporting the results of its testing.[13]

38. The hand sanitizer products with the highest levels of benzene in Valisure's testing were those marketed by Defendant. Two samples of Defendant's ArtNaturals-branded hand sanitizer products tested by Valisure contained benzene at 16.1 and 15.2 PPM—approximately eight times the emergency, interim limit established by the FDA.[14] Other samples of Defendant's hand sanitizer products also tested above the emergency, interim limit established by the FDA. No sample of Defendant's hand sanitizer product tested below the FDA's emergency, interim limit for benzene. All samples also tested far above zero PPM—the level permissible prior to the FDA's emergency, interim policy. As benzene was found in all samples of Defendant's products that were tested, it is likely that the presence of benzene is pervasive throughout Defendant's products. Because the actual or potential presence

---

[13] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Hand-Sanitizer-v4.14.pdf

[14] *Id.*

of benzene is not disclosed, there is no way for a consumer to tell or to know whether Defendant's hand sanitizer products contain benzene. No reasonable consumer would take the risk that the product they purchase might contain benzene at multiple times the emergency, interim limit established by the FDA, or was illegal to purchase.

39.     As Defendant's own website states, "Due to the global demand for sanitizing and personal protective products, hand sanitizer sales have grown at an unprecedented and exponential rate. With this demand, poorly formulated hand sanitizers made their way into the market." Thus, Defendant was on notice of the possibility of contamination of hand sanitizer products with unsafe chemicals, toxins, and impurities. Yet, at the same time Defendant was describing these circumstances on its website, it was manufacturing, distributing, marketing, and selling precisely such "poorly formulated hand sanitizers" that either actually or potentially contained high levels of benzene without adequately testing those products.

40.     As a manufacturer, distributor, and seller of an OTC drug, Defendant had and has a duty to ensure that its hand sanitizer products do not contain excessive levels of benzene, including through regular testing. Based on the testing results set forth above, Defendant made no reasonable effort to test its hand sanitizer products for benzene or other impurities.  Nor did it disclose to Plaintiff or any other consumers in any product advertising, labeling, packaging, or marketing that its hand sanitizer products may contain benzene at all, let alone at levels that are many multiples of the emergency, interim limit set by the FDA. To the contrary, Defendant represented and warranted, either expressly or impliedly, that its hand sanitizer products were "natural," "chemical free," "free from the harshest synthetic chemicals," and otherwise free from toxic chemicals, and thus were of merchantable quality, complied with federal and state law, and did not contain carcinogens, reproductive toxins, or other impurities such as benzene.

41.     When Plaintiff purchased Defendant's ArtNaturals-branded hand sanitizer products, the product's labeling did not disclose the actual or potential presence of benzene in any amount, let alone at multiples of the FDA's emergency, interim limit. Plaintiff did not know, and had no reason to know, that Defendant's hand sanitizer products were misbranded and thus unlawful to sell or purchase as set forth herein.   Not only would Plaintiff not have purchased Defendant's hand sanitizer products at all had she known they contained benzene, she would not have been capable of purchasing them if Defendant had done as the law required and tested those products for benzene and other carcinogens, reproductive toxins, and impurities. Moreover, no reasonable consumer would have paid any amount for hand sanitizer products containing any amount of benzene, a known carcinogen and reproductive toxin, much less multiples of the emergency, interim limit set by the FDA. Thus, if Plaintiff and Class members had been informed that Defendant's hand sanitizer products contained or may contain benzene, they would not have purchased or used the products at all, making such omitted facts material to them.

42.     Had Defendant adequately tested its hand sanitizer products for benzene and other carcinogens, reproductive toxins, and impurities, it would have discovered that its products contained benzene at levels far above the FDA's emergency, interim limit, making those products ineligible for distribution, marketing, and sale.

43.     Defendant has sold its hand sanitizer products directly to consumers through its website throughout the COVID-19 pandemic. In fact, Defendant continues to sell its ArtNaturals-branded hand sanitizer products on its website even as of April 2, 2021—a week after the results of Valisure's testing were made public. Nowhere on Defendant's website is the presence of benzene in its hand sanitizer products disclosed by Defendant.

44.     Defendant's undisclosed inclusion of benzene at levels far exceeding the emergency, interim limit set by the FDA renders its hand sanitizer products

unapproved, misbranded, mislabeled, and/or adulterated under federal and state law. Misbranded products cannot be legally sold or purchased and are legally worthless, and no reasonable consumer, including Plaintiff, would purchase such products if they knew such products were illegal to buy or possess.

45.   Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading drug advertisements or statements on products or product packaging, labeling, or any other medium.

46.   Defendant has violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer for sale any drug that is falsely advertised.

47.   Defendant has violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise any drug that is adulterated or misbranded, or to deliver or proffer for delivery any such product.

48.   Plaintiff's and Class members' purchases of Defendant's hand sanitizer products injured or damaged them because misbranded products cannot be legally sold, possessed, advertised, or delivered; have no economic value; and are legally worthless. Thus, when Plaintiff and the Class purchased Defendant's illegally misbranded products, there was injury and causation even absent reliance on the misrepresentations or omissions of material fact that resulted in Defendant's hand sanitizer products being misbranded. The unlawful sale of misbranded products— standing alone and without any allegations of deception by Defendant other than the implicit misrepresentation that the products were legal to purchase and sell, and without any review of or reliance on the particular labeling of Defendant's hand sanitizer products—gives rise to Plaintiff's and the Class members' claims and rights to recover. Further, by having purchased and used Defendant's hand sanitizer products Plaintiff and Class members may have been exposed to dangerously high levels of the known carcinogen and reproductive toxin benzene.

49.   Defendant acted unlawfully, unfairly, unethically, and in a misleading

manner when it unlawfully sold misbranded products containing undisclosed and unlawful levels of the carcinogen and reproductive toxin benzene. For the reasons set forth above, such transactions are prohibited by law.

50. Given Defendants' ongoing business acts and practices, Plaintiff is unable to rely on Defendant's advertising or labeling in the future, and so will not purchase the product, although she would if it were sold as advertised, reformulated and made free of benzene and other undisclosed impurities. As a result, Plaintiff has standing to seek injunctive relief. Also, as a person who has suffered injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent business acts and practices, Plaintiff has standing to seek injunctive relief for herself, the Class, and for the benefit of the general public pursuant to *McGill v. Citibank, N.A.,* (2017) 2 Cal. 5th 945, 959-60.

51. Prior to filing this action, Plaintiff made a request in writing that Defendant provide an appropriate correction, replacement, or other remedy to all persons who purchased the products in question and sent that demand to Defendant via overnight delivery service and by certified mail, return receipt requested. As of the date of the filing of this Complaint, Defendant has offered no response.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§1750, *et seq*. ("CLRA")**

52. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above, except any allegation as to entitlement to damages for this Cause of Action.

53. Defendant's actions, representations, omissions, and other conduct described above are subject to the CLRA because they extend to transactions that have resulted or were intended to result in the sale and provision of goods to persons primarily for consumer, family, or household purposes.

54.     Plaintiff and many Class members are "consumers" within the meaning of Cal. Civ. Code §1761(d).

55.      Defendant's hand sanitizer products are "goods" within the meaning of Cal. Civ. Code §1761(a).

56.     Defendant is a "person" under Cal. Civ. Code §1761(d).

57.     By misrepresenting and failing to disclose the material facts set forth above with respect to the actual or potential benzene contents of Defendant's hand sanitizer products, the unapproved, adulterated, and misbranded nature of those products, and the unlawful nature of the manufacturing, distribution, advertising, and sale of those products, Defendant's conduct constitutes a violation of California Civil Code section 1750, *et seq*. Specifically, these practices constitute violations of Civil Code section 1770(a), under, *inter alia*, the following subdivisions, by:

> (2)     Misrepresenting the source, sponsorship, approval, or certification of goods or services;

> (3)     Misrepresenting the affiliation, connection, or association with, or certification by, another;

> (5)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

> (7)     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

> (9)     Advertising goods or services with the intent not to sell them as advertised;

> (14)    Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve,

or that are prohibited by law; and

(16)   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

58.   Defendant's misrepresentations and omissions were material because if Plaintiff and the Class members had been informed of the material facts, including not only the actual or potential presence of benzene in Defendant's hand sanitizer products but also the fact that those products were unlawful to sell, they would not have purchased those products at any price.

59.   Plaintiff and Class members reasonably acted in response to such misrepresented and omitted material facts by purchasing the products at issue at the prices they did. Plaintiff and Class members were deceived by such conduct, as they would not be able to reasonably ascertain the presence of benzene in those products for themselves, or that the products were unsafe, misbranded, adulterated, and unapproved and thus unlawful to sell under California and federal law.

60.   The material facts Defendant has misrepresented and omitted were known and/or knowable to Defendant, who had superior knowledge and access to the facts and had not only the ability but also an affirmative duty and obligation to test its hand sanitizer products and disclose the presence of benzene and other carcinogens, reproductive toxins, and other impurities, as such facts go directly to the safety of the use of such products. Defendant knew or reasonably should have known that such facts were not known to or reasonably discoverable by Plaintiff, Class members, or the general public.

61.   As a result of the misrepresentation, concealment, and suppression of these material facts, Plaintiff and Class members did not receive the benefit of their bargain as required by California law.

62.   Plaintiff has provided Defendant with notice of the violations of the CLRA pursuant to Cal. Civ. Code §1782(a). The CLRA provides that a Complaint

22

for violation of the CLRA may assert claims for actual, consequential, statutory, and/or punitive and exemplary damages should the violations not be remedied within thirty (30) days of receipt of this written notification. If 30 days elapse from the time Plaintiff's notice was mailed to and received by Defendant without a cure of Defendant's violations offered to Plaintiff and all other Class members, Plaintiff will amend this Cause of Action to assert a claim for damages under the CLRA on behalf of herself and all Class members. Plaintiff at this time seeks restitution, as well as an injunction against Defendant's ongoing violations alleged herein, in order to prevent any future harm to the Class members and/or for the benefit of the general public pursuant to Cal. Civ. Code §1780(a)(2), as well as Plaintiff's attorneys fees and costs.

## SECOND CAUSE OF ACTION

**VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE §17200, *et seq.***

63.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above, except any allegations as to entitlement to damages.

64.   Defendant has engaged and continues to engage in acts and practices of unfair competition. As used in this Cause of Action, "unfair competition" means any unlawful, unfair, or fraudulent business act or practice, or false or misleading advertising as defined under Business & Professions Code §17500.

65.   This conduct is actionable pursuant to Business & Professions Code §§17200 and 17203.

66.   The UCL prohibits "unfair" business acts and practices. As the conduct at issue is not conduct directed as between competitors but conduct directed at purchasers and consumers of the hand sanitizer products at issue, there are several tests that determine whether a practice is "unfair," examining the practice's impact on the public balanced against the reasons, justifications, and motives of Defendant:

(a)   does the practice offend an established public policy, as here the practices at issue offend the policies against

harming competition by engaging in misleading advertising and sales practices, as reflected in the laws and policies set forth herein;

(b)    balancing the utility of Defendant's conduct against the gravity of the harm created by that conduct, including whether Defendant's practice caused substantial injury to consumers with little to no countervailing legitimate benefit that could not reasonably have been avoided by the consumers themselves; or

(c)    is the practice immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to consumers.

Based on the facts alleged above, Defendant's acts and practices qualify as an "unfair" business practices under any of these standards.

67.    Defendant's material misstatements and omissions of material fact, all of which are likely to mislead Plaintiff, Class members, and the public, constitute "fraudulent" business acts or practices within the meaning of the UCL.

68.    Defendant's practices as detailed herein are also "unlawful" business practices in that they violate, *inter alia*, the provisions of Cal. Civ. Code §1750, *et seq.*, cited above; constitute systematic breaches of both express and implied warranties; and are in violation of numerous provisions of the FDCA and the Sherman Law, as set forth in detail above.

69.    Based on the conduct alleged above, Defendant also violated Bus. & Prof. Code § 17500, which makes it unlawful for any person, firm, corporation, or association, or any employee thereof, with intent directly or indirectly to dispose of personal property or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to

be made or disseminated from this state before the public in any state, in any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement concerning that personal property, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property as so advertised.

70.     As a result of Defendant's unlawful, unfair, and fraudulent business practices and untrue and misleading advertising as alleged herein, Plaintiff suffered injury in fact and lost money or property in the form of money that she expended for Defendant's hand sanitizer products that she would not have paid in the amount she did (indeed, at all) to Defendant or its agents had the true facts been disclosed to her. Meanwhile, Defendant has illegally retained monies that should have been repaid but have not been, unjustly enriching itself thereby. Thus, in engaging in conduct that constitutes unfair competition, Defendant has acquired or retained money or property in which Plaintiff and Class members have a vested interest.

71.     Pursuant to Business & Professions Code §§ 17203 and 17204, the Court may enjoin such conduct on behalf of the Class and for the benefit of the general public, order the provision of corrective notice, direct a product recall, and order Defendant to restore to Plaintiff and Class members any money or property that Defendant has acquired or retained as a result of any act or practice that constitutes unfair competition in which Plaintiff and Class members have a vested interest. The Court may also order Defendant to disgorge any profits Defendant has obtained either directly or indirectly from Plaintiff and Class members as a result of this conduct. Plaintiff requests such relief. Plaintiff also seeks the payment of fees and costs pursuant to, *inter alia*, Cal. Code Civ. Proc. § 1021.5.

## THIRD CAUSE OF ACTION

## BREACH OF THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS

72.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above.

73.    All fifty states, including California (Cal. Comm. Code § 2314), as well as the District of Columbia and Puerto Rico, have adopted the Uniform Commercial Code's provisions regarding the implied warranties of merchantability and fitness for ordinary purpose. Defendant, as the designer, manufacturer, marketer, distributor, promoter, and/or seller of hand sanitizer products, is a "merchant" within the meaning of those provisions, and its hand sanitizer products are "goods" under those provisions. By law Defendant provided implied warranties of merchantability and fitness for ordinary purpose with respect to its hand sanitizer products.

74.    Defendant breached those warranties because its hand sanitizer products were not fit for their ordinary purpose; were mislabeled as the products do not accurately disclose the contents of such products and the product labels or websites claim such products are "chemical free" or other similar claims; were misbranded; would not pass without objection in the trade or industry; were not adequately advertised, packaged, and/or labeled, and omitted material facts to the contrary, including the products not being able to be sold from California or in the United States as a misbranded or mislabeled product; were not of merchantable quality; and did not conform to the standards applicable to such products. The products in question are not reasonably suitable for the ordinary uses and purposes of goods of the general type described by Defendant and are not legally capable of passing in the market under the description by which they are sold. Defendant either was or should have been aware that these products could not be legally sold and, thus, could not conform to these implied warranties.

75.    In addition, and as a separate basis to assert a claim for breach of these

26

implied warranties, the presence of a hazardous substance as set forth above constitutes a latent defect in the products that existed at time of purchase but was undiscoverable by Plaintiff and Class members at time of sale. If these defects were known the products would not have been saleable for the reasons set forth above and would not measure up to the descriptions of the products given by Defendant. This separately renders the products unmerchantable.

76.    Plaintiff and Class members purchased the products from Defendant or its agents, who were in the business of selling these products to consumers. To the extent any warranties were provided by Defendant to these agents, Plaintiff and Class members were intended third party beneficiaries of such warranties and thus may assert such claims directly against Defendant.

77.    Plaintiff and Class members would not have purchased the hand sanitizer products they did if they had been aware of the actual or potential presence of benzene in those products. The products they purchased were not altered by Plaintiff or Class members.

78.    All conditions precedent to seeking liability for breach of these implied warranties have been performed by or on behalf of Plaintiff and Class members in terms of paying for the goods at issue and Defendant having been placed on reasonable notice of these breaches within a reasonable time after such breaches were discovered.

79.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and Class members have been injured and suffered damages in an amount to be determined at trial. Not only were the hand sanitizer products they purchased unmerchantable and unfit for any purpose, they were wholly worthless.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

80.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above.

81.    All fifty states, as well as the District of Columbia and Puerto Rico, have adopted the Uniform Commercial Code's provisions regarding express warranties.

82.    Defendant's labeling, marketing, and/or advertising of its hand sanitizer products containing the statements set forth herein and not disclosing the material facts set forth above constitute express warranties by which Defendant warranted that its hand sanitizer products were fit for their ordinary use, were safe and effective, were free from toxic chemicals, and/or did not contain undisclosed carcinogens, reproductive toxins, or other impurities.

83.    Defendant breached its express warranties because the products at issue have been reported to actually or potentially contain undisclosed and dangerously high levels of the known carcinogen and reproductive toxin benzene and thus were misbranded, adulterated, unapproved, unsafe, not lawful to sell or purchase, and not merchantable or fit for their ordinary purpose.

84.    Plaintiff and Class members would not have purchased these hand sanitizer products at the prices they did, or at all, if they had been aware of the actual or potential presence of benzene in those products.   Not only were the hand sanitizer products they purchased unfit for any purpose, they were illegal to purchase or sell and thus wholly worthless.

85.    All conditions precedent to seeking liability for breach of these express warranties have been performed by or on behalf of Plaintiff and Class members in terms of paying for the goods at issue and Defendant having been placed on reasonable notice of these breaches within a reasonable time after such breaches were discovered.

86.    As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff and Class members have been injured and suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT,

## 15 U.S.C. § 2301, *et seq.*

87.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above.

88.    Defendant is a "warrantor," and Plaintiff and Class members are "consumers," under the Magnuson-Moss Warranty Act.

89.    As alleged above, Defendant expressly and impliedly warranted its hand sanitizer products.

90.    Within the meaning of 15 U.S.C. § 2310(d)(1), Plaintiff and Class members were "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract."

91.    As alleged above, Plaintiff, prior to the filing of this action, made a request in writing that Defendant provide an appropriate correction, replacement, or other remedy to all persons who purchased its hand sanitizer products, but Defendant has not yet provided such a remedy and in fact continues to sell its misbranded and adulterated products directly to customers through its website and to retailers. Plaintiff brings this claim seeking such damages in an amount according to proof at time of trial.

92.    Under 15 U.S.C. § 2310(d)(2), a prevailing Plaintiff is also entitled to an award of attorneys' fees and expenses, and Plaintiff brings this claim seeking such relief.

## SIXTH CAUSE OF ACTION

## FRAUD AND DECEIT

93.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above.

94.    It is unlawful under California law to: (a) suggest, as a fact, that which

is not true, by one who does not believe it to be true; (b) assert, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; or (c) suppress a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

95.     Defendant made affirmative misrepresentations of material fact in its advertising, packaging, marketing, and sale of its hand sanitizer products. These affirmative misrepresentations, either expressly or impliedly, include that Defendant's hand sanitizer products could legally be sold; that Defendant's hand sanitizer products were suitable and safe for frequent topical application; that Defendant's hand sanitizer products were "gentle enough for children's sensitive skin"; that Defendant's hand sanitizer products were "chemical free," use "only nourishing, natural ingredients," and were "free from . . . toxic chemicals"; that Defendant's hand sanitizer products were comprised of "pure natural ingredients"; that Defendant's hand sanitizer products were "free from the harshest synthetic chemicals"; and that Defendant's hand sanitizer formulation was "plant-based," all of which came with the associated implied representations that Defendant's hand sanitizer products did not contain and/or were in compliance with FDA and state law limits on carcinogens, reproductive toxins, and impurities such as benzene; that Defendant's hand sanitizer products were manufactured consistent with Good Manufacturing Practices, as required by federal and state law; and that Defendant's hand sanitizer products were not adulterated or misbranded. Each of these misrepresentations was material, and based on the facts set forth above Defendant had no reasonable grounds for making such representations and/or did not believe such statements to be true based on the information available to it. These representations were likely to mislead for want of communication of the material fact of the actual or potential presence of benzene in Defendant's hand sanitizer products.

96.     Defendant omitted material facts, including that its hand sanitizer

30

products actually or potentially contained a known carcinogen and reproductive toxin benzene, were not in compliance with Good Manufacturing Practices and the FDA's emergency, interim limit on the presence of benzene in hand sanitizer products, were adulterated and misbranded, and were not legally eligible for sale. Each of these omissions was material. As the disclosure of these issues are directly related to the safety of such products, and applicable state and federal law requires the disclosure of the presence of chemicals such as benzene, Defendant had an affirmative duty and was bound to disclose the presence of benzene in its hand sanitizer products, which material fact it omitted from disclosure.

97.     Defendant's misrepresentations and omissions of material fact were intended to induce and in fact induced Plaintiff and Class members to purchase Defendant's hand sanitizer products, which Defendant knew or reasonably should have known actually or potentially contained benzene and thus were unsafe, adulterated, misbranded, not in compliance with federal or state law, not legally eligible for sale or purchase, not "gentle enough for children's sensitive skin," not comprised of "pure natural ingredients," not "free from the harshest synthetic chemicals," not "chemical free," not "free from . . . toxic chemicals," did not use "only nourishing, natural ingredients," and were not wholly "plant-based." Had Plaintiff and Class members not been prevented from learning the material facts regarding Defendant's hand sanitizer products by Defendant's misrepresentations and omissions of material fact, not only would Plaintiff and Class members have been unwilling to pay any amount of money for those products, they would have been *unable* to do so because those products were not legally eligible for purchase and sale. But for Defendant's misrepresentations and omissions, Plaintiff and Class members would not have purchased Defendant's hand sanitizer products at all, at any price.

98.     Defendant either knew or reasonably should have known that its misrepresentations were materially false and misleading; that its omission of

material facts that it was bound to disclosed were suppressed, or rendered its representations likely to be false and misleading for want of communication of such omitted facts; and/or that it asserted as a fact that which was not true, and Defendant had no reasonable ground for believing it to be true.

99.    Plaintiff and Class members justifiably relied on Defendant's misrepresentations and omissions of material fact. Identical or substantially identical misrepresentations and omissions of material fact were disseminated to members of the Class. While reliance may therefore be presumed, it is also established by the fact that Defendant's hand sanitizer products were not legally eligible for purchase and sale.

100.   As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and Class members have suffered harm and were damaged in an amount to be determined at trial. As such acts are the result of oppression, fraud, or malice, Plaintiff and Class members are also entitled to an award of exemplary damages under this cause of action.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

101.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above.

102.   As a result of placing into commerce its hand sanitizer products, which Defendant recommended be frequently applied directly to the skin of potentially millions of Americans, Defendant was under a duty to accurately and truthfully represent the nature, contents, and safety of its hand sanitizer products.

103.   Defendant breached that duty by negligently misrepresenting and omitting material facts concerning its hand sanitizer products.

104.   At the time they occurred, Defendant's affirmative representations were false, and the material facts Defendant failed to disclose rendered its representations likely false and misleading for want of disclosure of such omitted

facts.

105.   Defendant reasonably should have known those representations were material, false, and misleading, and that its omissions were material and rendered its representations false and misleading. Defendant had no reasonable grounds for believing its representations to be true, nor for believing that the true, material facts about its hand sanitizer products would not be communicated to consumers absent the material information regarding the actual or potential benzene contents of those products, which Defendant concealed and/or failed to disclose.

106.   Defendant reasonably should have known that its misrepresentations and omissions of such material facts would induce Class members to purchase Defendant's hand sanitizer products. Indeed, Defendant intended its misrepresentations and omissions to have that effect.

107.   Plaintiff and Class members were unaware of the true facts and justifiably relied on Defendant's misrepresentations or omissions, and substantially identical misrepresentations and omissions were disseminated to Class members. But for Defendant's misrepresentations and omissions, Plaintiff and Class members would not have purchased Defendant's hand sanitizer products at all, at any price.

108.   As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and Class members have suffered harm and were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### NEGLIGENCE

109.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above, except allegations as to Defendant's intent and requests for exemplary damages.

110.   As a result of placing into commerce its hand sanitizer products, which Defendant recommended, and therefore knew or should have known, would be frequently applied directly to the skin of millions of Americans, Defendant was

under a duty to exercise reasonable and due care in manufacturing its hand sanitizer products, including by testing those products for impurities such as benzene, to ensure that they were safe, complied with federal and state law and FDA limits on impurities in hand sanitizer products, and were not adulterated or misbranded. That duty of due care extended to Plaintiff and Class members because they were the intended and foreseeable users of Defendant's hand sanitizer products.

111.   Defendant knew or should have known that its hand sanitizer products did not satisfy the FDA's emergency, interim limit on benzene in hand sanitizer products and analogous state laws and regulations and were therefore unsafe, adulterated, and misbranded. Defendant was in the best position to investigate, discover, and remedy such deficiencies in its own products. In particular, the possibility of benzene contamination was specifically identified by the FDA, and the FDA specifically instructed firms to test for such carcinogens and impurities given the risk of contamination. There was a foreseeable risk of harm to Plaintiff and Class members resulting from Defendant's actions and inactions.

112.   Defendant breached its duty to Plaintiff and Class members by failing to discover or by concealing the benzene content of its hand sanitizer products, and by failing to properly oversee the manufacturing of its hand sanitizer products so as to avoid the presence of high levels of benzene in the first place. In these regards Defendant failed to exercise due care to safeguard the health of its customers— Plaintiff and Class members, who are the natural, foreseeable, and direct victims of Defendant's breach.

113.   Defendant violated numerous state and federal laws as detailed above. Those laws are intended to protect purchasers of OTC drugs like Defendant's hand sanitizer products, and they are designed to prevent the type of occurrence that occurred here. Defendant's violation of those state and federal laws created a foreseeable risk of injury to Plaintiff and members of the Class. Thus, Defendant's conduct was not only negligent but also negligent *per se*.

114.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injury and sustained damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION

### RESTITUTION, COMMON COUNTS, UNJUST ENRICHMENT, QUASI-CONTRACT AND/OR ASSUMPSIT

115.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above. This Cause of Action is not derivative of the other Causes of Action asserted above, but rather is recognized as a separate and independent Cause of Action that may be submitted to the jury.

116.   Plaintiff and Class members assert a claim for equitable restitution and/or restitutionary damages at law based on the principles of restitution, unjust enrichment, common counts such as monies had and received and mistaken receipt or retention of monies, implying an obligation at law based on principles of quasi-contract and/or the common-law principle of assumpsit, as alleged herein.

117.   Defendant was unjustly enriched at the expense of Plaintiff and Class members as a consequence of Plaintiff and Class members paying monies for Defendant's wholly worthless and illegal hand sanitizer products.

118.   Defendant must restore to Plaintiff and Class members money that Defendant received as a result of their purchases but that should belong to Plaintiff and the Class members, as Defendant knew or had reason to know that its hand sanitizer products did not conform to their represented characteristics and could not lawfully be sold in and from California, or anywhere in the United States. Those products were misbranded, mislabeled, and adulterated under the FDCA and the Sherman Law and thus were unlawful to sell.

119.   Plaintiff and Class members conferred a benefit upon Defendant by purchasing the products at issue. Defendant, having been unjustly conferred a benefit through illegal conduct as set forth above, and having received such benefits using

misleading and illegal acts and practices, and omitting material facts as set forth in detail above, is required to make restitution. The circumstances are such that, as between the two, it is unjust for Defendant to retain such a benefit based on the conduct described above. Such money or property belongs in good conscience to Plaintiff and Class members and can be traced to funds or property in Defendant's possession or made as a result thereof. Defendant has received a benefit from Plaintiff and Class members in the form of monies paid by them for the products at issue and is unjustly retaining that benefit at the expense of Plaintiff and Class members. The unjustified charging and retention of monies from sales of products that were not lawful and that passed through Defendant entitles Plaintiff and Class members to restitution and disgorgement of such monies.

120.   Defendant entered into a series of implied-at-law obligations that resulted in a sum certain as stated above being had, received, and/or unjustly retained by Defendant, either directly or indirectly, at the expense of Class members. Defendant had knowledge of such benefits. Defendant owes Class members specific sums that can be calculated based on the records of Defendant. Under established principles of quasi-contract and assumpsit under California law, Defendant has an obligation created by law to restore Plaintiff and Class members to their former position by returning the monies paid for the products it could not lawfully sell and thus is not lawfully entitled to retain. The specific sum certain to which Plaintiff and Class members are entitled is the purchase price of the products, plus interest thereon. This obligation is imposed by law, regardless of the intent of the parties. Rather, equity and good conscience dictate that under the circumstances Defendant as the benefitted party should make reimbursement of the monies paid for the products to Plaintiff and Class members. Such monies were received by Defendant and were not intended to be used for Plaintiff's and Class members' benefit, but rather for its own profit.

121.   Pursuant to California Civil Code § 2224, one who gains or retains a

thing (including money) by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, unless they have some other and better right thereto, is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendant from enjoying the fruits of its wrongdoing, Plaintiff and Class members are entitled to the establishment of a constructive trust, in a sum certain, of all monies that have been improperly retained by Defendant, as well as monies made by Defendant on such payments, from which Plaintiff and Class members may seek restitution.

122.   In addition, in light of Defendant's knowledge of the true facts as set forth above, Defendant's conduct warrants an assessment of exemplary damages under this independent cause of action, in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof. Plaintiff also requests an order for an accounting and prohibiting Defendant from failing and refusing to immediately cease the wrongful conduct as set forth above and enjoining Defendant from continuing to make the misleading claims at issue herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows, as applicable to the appropriate causes of action as set forth above:

1.      For an order certifying this action as a class action;

2.      For an order appointing Plaintiff as Class representative, and appointing undersigned counsel as Class counsel;

3.      For a declaration that Defendant is liable with respect to each of the above causes of action;

4.      For restitution and restitutionary disgorgement to Plaintiff and Class members in an amount to be determined at trial;

5.      For any direct, consequential, incidental, statutory, and/or exemplary damages as permitted for Defendant's violation of the laws identified above, as

applicable to such claims (and at this time, not as to claims under the CLRA), in an amount to be determined at trial;

6.      For costs of the suit and reasonable attorneys' fees as provided by applicable law and/or as set forth in the applicable causes of action as set forth above

7.      For an injunction against the conduct alleged herein on behalf of the Class and for the benefit of the general public, including an order for the provision of corrective notice and a product recall;

8.      For pre- and post-judgment interest at the legal rate; and

9.      For such other relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED: April 2, 2021

Alan M. Mansfield
WHATLEY KALLAS, LLP
355 So. Grand Avenue
Suite 2450
Los Angeles, CA 90071

16870 W. Bernardo Drive
Suite 400
San Diego, CA 92127
Phone: (310) 684-2504
          (858) 674-6641
Fax: (855) 274-1888
Email: amansfield@whatleykallas.com

Thomas Mauriello
MAURIELLO LAW FIRM
1181 Puerta Del Sol #120
San Clemente, CA 92673
Phone: (949) 542-3555
Fax: (949) 606-9690
Email: tomm@maurlaw.com

Charles Nicholas Dorman
*[To Appear Pro Hac Vice]*
WHATLEY KALLAS LLP
2001 Park Place North
Suite 1000
Birmingham, AL 35203
Phone: (205) 488-1200
Fax: (800) 922-4851
Email: ndorman@whatleykallas.com

*Attorneys for Plaintiff*

## **DECLARATION OF VENUE**

I, Alan M. Mansfield, declare as follows:

1.    I am one of the counsel for Plaintiff in this action and make this declaration to the best of my knowledge of the facts stated herein.

2.    At all relevant times herein, Defendant VIRGIN SCENT, INC., D/B/A ARTNATURALS was and is an entity that has its headquarters and principal place of business based in Gardena, California, is registered to do business in the State of California, and is doing business in the State of California and also in this County and District.

3.    Some of the transactions that form the basis of this action occurred, and at least a portion of Defendant's obligations or liabilities arose, in this District, as sales of the products at issue were made both in and from this District, in part through the Company's websites that are likely reviewed and/or maintained in this District, and shipments of the products that are made from this District.

4.    The Complaint filed in this matter contains a cause of action for violation of Cal. Civ. Code §§ 1750, *et seq.*, as against Defendant.

5.    Per the foregoing assertions, the CLRA cause of action in this Complaint has been properly commenced in the proper county and District for trial under the venue provisions of the CLRA.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was signed this 2nd day of April 2021 at San Diego, California.

_____

Alan M. Mansfield